IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| STAVANGER HOLDINGS, LTD and KARL ANDERSEN, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | Civil Action No.: 12 - 00646 (WTL)(DKL) |
| TRANEN CAPITAL, LTD, TRANEN CAPITAL ALTERNATIVE INVESTMENT FUND, LTD., THE LEO GROUP, LLC, KENNETH A. LANDGAARD, ARTHUR L. BOWEN and RANDY W. BAGLEY, | ) ) ) ) ) ) ) | |
| Defendants. | | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiffs Stavanger Holdings, Ltd. ("Stavanger") and Karl Andersen ("Andersen") (collectively, the "Plaintiffs"), by and through their attorneys, Faegre Baker Daniels LLP and Duane Morris LLP, respectfully submit the following opposition to the motion to dismiss filed by Tranen Capital Ltd. ("Tranen"), Tranen Capital Alternative Investment Fund, Ltd. (the "Fund"), Kenneth A. Landgaard ("Landgaard") and Arthur L. Bowen ("Bowen") (collectively, the "Tranen Defendants") and the motion to dismiss filed by The Leo Group, LLC ("Leo") and Randy W. Bagley ("Bagley") (collectively, the "Leo Defendants") (the Tranen Defendants and the Leo Defendants will be referred to collectively as the "Defendants").

### I. PRELIMINARY STATEMENT

This case is about the Tranen Defendants' failure to honor their promise to pay Andersen $3 million for the valuable services he provided to them between the years 2008 and 2011. Unfortunately, this promise was not set forth in a written agreement directly between the Tranen

Defendants and Andersen because, for reasons unknown to Andersen, the Tranen Defendants wished to conceal that they were making payments to Andersen. Instead, the Tranen Defendants memorialized their promise to pay Andersen in a consulting agreement entered into between Leo and Stavanger, but which the Tranen Defendants actually negotiated and drafted (the "Leo/Andersen Agreement"). Additionally, based on the emails attached to the Amended Complaint, it appears that the Tranen Defendants and the Leo Defendants entered into a separate agreement regarding the commitment to pay Andersen (the "Leo/Tranen Agreement"). The Leo/Andersen Agreement and the Leo/Tranen Agreement were both a part of the same transaction to pay Andersen and will be referred to hereinafter as the "Agreements."

To date, Defendants have paid Anderson $525,000 pursuant to the terms set forth in the Leo/Andersen Agreement but have failed to make any additional payments. Plaintiffs' Amended Complaint alleges breach of contract and unjust enrichment against all of the Defendants.

Defendants attempt to distance themselves from the consequence of their own machinations by advancing creative but legally insufficient arguments.

### *The Tranen Defendants Motion to Dismiss*

The Tranen Defendants argue that Plaintiffs cannot hold them liable for a contract to which they are not a party. This argument largely ignores well-established law that Tranen Defendants may be bound by the terms of the Leo/Andersen Agreement if they are in privity with the Leo Defendants. That is the obvious circumstance here. As discussed below and alleged in the Amended Complaint, the payment obligation set forth in the Leo/Andersen Agreement, which was negotiated and drafted almost entirely by the Tranen Defendants, actually memorializes the payment the Tranen Defendants promised Andersen.

Moreover, the Defendants appear to have negotiated a separate agreement between themselves regarding their commitment to pay Andersen. Unquestionably, these Agreements had the common objective of paying Andersen. For Andersen, dealing with the Leo Defendants in this transaction was equivalent to dealing with the Tranen Defendants because, as far as Plaintiffs could tell, the Defendants had jointly and severally committed to paying Andersen. Defendants did nothing to disabuse Plaintiffs of this perception and, in fact, acted in concert throughout the drafting and negotiation of the Agreements.

Significantly, Plaintiffs' allegations regarding the Tranen Defendants' substantial role in the Leo/Andersen Agreement are supported by several emails, which are attached to the Amended Complaint. These emails show that the Defendants were working together towards the common objective of paying Andersen. Of course, the Tranen Defendants offer no explanation for these emails in their motion to dismiss as any explanation would require that they concede the existence of privity, which would be fatal to their motion.

Notably, the Tranen Defendants have not moved to dismiss Plaintiffs' claim for unjust enrichment. Therefore, even if this Court dismisses Plaintiffs' contract claim, Plaintiffs' unjust enrichment claim against the Tranen Defendants must proceed.

*The Leo Defendants' Motion to Dismiss*

The Leo Defendants' motion is more nuanced than the Tranen Defendants' motion but equally deficient. The Leo Defendants argue that Plaintiffs' failure to attach a fully executed copy of the Leo/Andersen Agreement is somehow fatal to Plaintiffs' breach of contract claim. The law is clear though that the Plaintiffs are not required to produce a fully executed copy of a contract at the time of pleading if, as is the case here, it is not within their possession. Furthermore, the Leo Defendants' argument that the Leo/Andersen Agreement was never

executed is clearly contradicted by the fact that Leo <u>has</u> paid $525,000 to Andersen pursuant to that very agreement. In other words, the Leo Defendants have actually performed consistent with the agreement they contend was not executed. Of course, the Leo Defendants' motion to dismiss wholly ignores this fact.

The Leo Defendants also argue that Plaintiffs have not sufficiently alleged a claim for alter ego liability against Bagley. This argument misconstrues the Amended Complaint though. Plaintiffs do not allege a claim for alter ego liability against Bagley. The reason Bagley is named as a defendant is that Plaintiffs believe Defendants jointly and severally committed to paying Andersen. Discovery, especially of the separate agreement entered into between the Leo Defendants and the Tranen Defendants, and related emails and communications should clarify this point.

The Leo Defendants also contend that Plaintiffs have failed to allege facts sufficient to support an unjust enrichment claim against them. The Amended Complaint contradicts this argument as it specifically alleges that the Leo Defendants directly benefited from brokering many of the deals Andersen brought to the Tranen Defendants between 2008 and 2011. The Leo Defendants state that any benefits they did receive during this time were a result of their own effort. However, the Leo Defendants' argument, in addition to not being true, is utterly conclusory and unsubstantiated and should be dismissed as it presents a factual issue that cannot be decided on a motion to dismiss.

## II.   FACTS

Tranen was formed in or around February, 2008 to manage a fund that would invest in the Life Settlement Industry. Amended Complaint, ¶ 16. In 2008, the Tranen Defendants hired Andersen to work as a Chief Analyst because he had numerous foreign contacts and ample

experience successfully investing in the Life Settlement Industry. *Id*. at ¶18. Tranen Defendants promised to pay Andersen for the services he rendered once they had available cash. *Id*. at ¶19.

Between 2008 and 2011, Andersen's services included, but were not limited to, educating and training Tranen Defendants on the international Life Settlement Industry, writing newsletters to foreign investors, producing marketing materials for Tranen Defendants, traveling around the world to meet with prospective foreign investors, assisting in the closing of sales, and identifying business opportunities in foreign markets for Tranen Defendants. *Id*. at ¶20. Essentially, Andersen handled the day-to-day operations of marketing and sales, targeting foreign investors, at Tranen and the Fund. In fact, the vast majority of investors in the Fund between 2008 and 2011 came from Andersen's contacts. *Id*. at ¶20. As a direct result of Andersen's considerable knowledge, expertise, connections, time and effort, the Fund is now worth approximately $170 million. *Id*. at ¶22. The Leo Defendants also benefited from the time and effort Andersen expended managing marketing and sales for the Tranen Defendants because most of the sales transactions were brokered by Leo. *Id*. at ¶23.

In or around October, 2011, Tranen Defendants decided that they no longer required Andersen's services. *Id*. at ¶25. They promised to compensate Andersen $3 million for the services he had rendered from 2008 through 2011. *Id*. At Tranen Defendant's insistence, this promise was memorialized in the Leo/Andersen Agreement, which was entered into between Leo and Stavanger. *Id*. at ¶¶ 27-28.

The Tranen Defendants are not signatories to this agreement. However, the parties intended to have the Leo/Andersen Agreement memorialize Tranen Defendants' promise to pay Andersen either through Leo or by reimbursing the Leo Defendants for payments it advanced to Andersen. *Id*. at ¶29. Accordingly, the Tranen Defendants controlled the drafting and

5

negotiation of material terms of the Leo/Andersen Agreement, including, but not limited to, the following: a) setting the period of the agreement as 3 years; b) setting the amount of payment obligation at $3 million; c) insisting on the insertion of various protective covenants to benefit Tranen; and d) conditioning Andersen's receipt of payment upon his compliance with these covenants. *Id*. at ¶33.

The emails attached to the Amended Complaint, which are believed to be just a small sample of the emails that are were exchanged between the parties regarding the drafting of the Agreements, substantiate Plaintiffs' claim that the Tranen Defendants are in privity with the Leo Defendants. For example, on November 7, 2011, Bagley emailed Andersen, Landgaard and Bowen to let them know that he was meeting with his attorney to begin drafting the Leo/Andersen Agreement and required instruction from them on some key aspects of the agreements:

> …We need to get clarification from both sides regarding the timeframe for the payout. I have heard 2 and 3 years. I think it is important that we include a payment schedule for whatever the period is. If it is to be quarterly and then I would assume the balance after the initial lump sum would be divided and paid quarterly over the agreed period (2 or 3 yrs)? If we are using Nov. 1, 2011 as the start date (lump sum) then the 2nd payment would be February 1st 2012 and then every 3 months after. We also are meeting with our CPA this morning to clarify how we show this. I am thinking Karl would get a 1099 for consulting work. If any of you has input on this please provide it to us?
> Also, any language any of you want in these agreements needs to be sent to us ASAP so we can speed this along.

*Id*. at ¶38, *see* Exhibit 3; *see also* Exhibit 5. In response to Bagley's email, Landgaard instructed Bagley to set the term at 3 years. *Id*. at ¶42, s*ee* Exhibit 5.

It is also Landgaard who explains to Andersen that his receipt of payments will be conditioned on compliance with certain protective covenants that the Tranen Defendants wanted to include in the Leo/Andersen Agreement:

> Well I think you know…if you want to be reasonable then no trash talk…if you don't [then] NO CASH…your pick…it's in your hands…

*Id*. at ¶47, s*ee* Exhibit 8.  Landgaard's hard-nosed insistence on including protective covenants into the Leo/Andersen Agreement resulted in the insertion of a non-disparagement provision and other protective covenants in the Leo/Andersen Agreement.  *Id*. at ¶¶ 47-51,  *see* Exhibit 1, Secs. 11 and 12.

It also appears that the Defendants entered into a separate agreement between themselves [the "Leo/Tranen Agreement"] regarding their commitment to pay Andersen.  The following excerpt from an email sent by Bagley to Andersen, Landgaard and Bowan is illustrative:

> We have a draft of what [Andersen] prepared however we have our attorney working on a version between **us and [Andersen]** and **us and the fund [Tranen]**.  As I told [Andersen] Friday we don't have either yet but are meeting with our attorney tomorrow and as soon as we have a completed draft all parties [Andersen, Landgaard, and Bowen] will get it for review.  We (Brock [Bagley's son] and I) are taking on a commitment to make sure [Andersen] gets paid and I can assure all involved any agreement binding us to a said number must be drafted by our attorney to cover the process.  The intent is for all parties to be comfortable with the end result.

*Id*. at ¶ 37, *see* Exhibit 2 (emphasis added).  Bagley describes the importance of having two written agreements between the parties:  "It is imperative that we have agreements in place since we are the ones committing to $3M!" *Id*. at ¶ 39, *see* Exhibit 4.

The Tranen Defendants' final review and approval of the Agreements was necessary before the transaction was finalized. Accordingly, Andersen sent the following email to Landgaard, Bowen and Bagley:

> So guys…we all set to sign?
> Agreements [the Leo/Andersen and Leo/Tranen Agreements] back and everything?
> Let me know if you need anything clarified but we are good from our side.

*Id*. at ¶52, s*ee* Exhibit 10. Landgaard responded by email to Andersen, Bowen and Bagley as follows:

> I think it all looks OK, I will review the last version this afternoon.

*Id*. Bowen also confirmed his approval of the Agreements in his November 11, 2011 email to Andersen:

> [J]ust sent my comments to [Bagley] and his lawyer. Nothing substantive; it's a go from my POV.

*Id*. at ¶ 53, *see* Exhibit 11.

Plaintiffs were never given copies of the fully executed Agreements. Nevertheless, it is reasonable to infer that the Agreements were executed because Leo has paid Andersen $525,000. The Leo/Andersen Agreement provides that Leo pay Andersen $500,000 within 5 days of its execution. *See* Amended Complaint, Exhibit 1, Sec. 4. *Id*. at ¶¶ 55-57. Leo wire transferred $100,000 to Andersen on November 9, 2011 before the Leo/Andersen Agreement was executed as an advance on the first payment. *Id., See* Exhibit 12. The remaining $400,000 was wire transferred to Andersen on November 14, 2011 and November 15, 2011, or within 5 days of November 11, 2011, which is the date Landgaard and Bowen appear to have approved the Agreements. *See* Amended Complaint, Exhibits 10 and 11. *Id.* Leo has only paid $25,000 since then, which was transferred to Andersen on February 3, 2012. *Id.*

The Tranen Defendants make no effort to reconcile all of the emails cited above and attached to the Amended Complaint with their argument that they are not parties to this transaction, even though the emails plausibly demonstrate privity. Similarly, the Leo Defendants, who argue that "an agreement would only exist once a written contract was finalized," Leo Defendants' Brief, p. 5, have made no effort to explain the $525,000 in payments they have made to Andersen in the days and weeks following Andersen's execution of the Leo/Andersen Agreement and Landgaard and Bowen's approval of it. Defendants choose to ignore these facts because they are fatal to their motions to dismiss.

### III.  LEGAL STANDARD

In both of their motions to dismiss, the Defendants contend that the Amended Complaint fails to state a cause of action upon which relief can be sought. Of course, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint that states no claim upon which relief can be granted. However, a court deciding a Rule 12(b)(6) motion must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor without engaging in fact-finding. *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010); *In re Consolidated Industries Corp.*, 360 F.3d 712, 717 (7th Cir. 2004). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Under the pleading standard of Rule 8(a), a complaint does not need to contain "detailed factual allegations," but the complaint's allegations "must be enough to raise a right to relief above the speculative level" and give the defendant fair notice of the claims being asserted and the grounds upon which they rest. *Bell Atl. v. Twombly*, 550 U.S. at 555; *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

For the reasons set forth below, the Amended Complaint has sufficiently alleged plausible claims for breach of contract and unjust enrichment against the Defendants.

### IV. TRANEN DEFENDANTS MAY BE BOUND BY THE TERMS OF THE LEO/ANDERSEN AGREEMENT ON THE BASIS OF PRIVITY

The Tranen Defendants entire motion to dismiss is premised on the general legal principle that a non-party to a contract may not be sued on that contract. However, non-signatories may be bound to a contract if privity exists. Privity is found if a non-party holds "a **mutual** or successive relationship with [a party] with regard to property or that their interests are so identical as to represent the same legal right.'" *Isp.com LLC v. Theising*, 805 N.E.2d 767, 774 (Ind. 2004) (quoting *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001)) (emphasis added). In order to determine whether privity exists, one of the factors a court may consider is the "closeness" of the relationship between the non-party and the party in the transaction in question. *See Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 688-689 (7th Cir. Ill. 1986) (in analyzing the applicability of a preclusion doctrine, the court cites *Southwest*

*Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir. Tex. 1977 ) for the proposition that "the term privity . . . represents a legal conclusion that the relationship between the one who is a party . . . and the non-party is sufficiently close to afford application of the principle of preclusion.").

Here, Plaintiffs have sufficiently alleged the existence of privity to survive Tranen Defendants' motion to dismiss. That privity exists between the Defendants is certainly more than plausible considering that:

- the Tranen Defendants negotiated various terms of the Leo/Andersen Agreement directly with Andersen, including the payment amount and term of the agreement;

- the Tranen Defendants required that certain protective covenants be integrated into the Leo/Andersen Agreement;

- the approval of the Tranen Defendants was required before the transaction could be finalized;

- the Tranen Defendants appear to have entered into a separate agreement with the Leo Defendants regarding this transaction (the Leo/Tranen Agreement); and

- the Leo Defendants paid Andersen $525,000 in the days after after Landgaard and Bowan indicated that they approved the Agreements.

Amended Complaint, ¶¶ 33; 36 – 54; 55 – 57.

As stated above, to survive a motion to dismiss a claim must have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, *supra*, 556 U.S. at 678. Plaintiffs have satisfied this standard and Tranen Defendants' motion to dismiss should be denied.

11

V. **THE ABSENCE OF THE FULLY EXECUTED AGREEMENT IS NOT FATAL TO THE AMENDED COMPLAINT**

Leo Defendants argue that Plaintiffs' inability to produce a fully executed copy of the Leo/Andersen Agreement is fatal to their contract claim. However, a plaintiff alleging a breach of contract where the Statute of Frauds is applicable does not need to provide a fully executed copy of the agreement at the time of pleading if the plaintiff does not have the agreement in its possession. *Wilkinson v. First Nat'l Bank*, 214 Ind. 513, 515-516 (Ind. 1938) ("If a contract is, in fact, signed by the party charged and it is otherwise sufficient to meet the requirements of the statute, an action may, under the proper circumstances, be maintained thereon, though the original signed copy thereof may be unavailable when the pleading is drawn.").

The Leo Defendants never returned fully executed copies of the Agreements. However, the Leo Defendants must have executed the Agreements or treated the Agreements as executed because they paid Andersen $525,000 pursuant to the clear terms of the Leo/Andersen Agreement, a fact that has not been challenged. In the words of the Leo Defendants, "an agreement would only exist once a written contract was finalized." Leo Defendants' Brief, p. 5. If they did not intend to be bound by and perform consistent with the Leo/Andersen Agreement, why would the Leo Defendants have made these substantial payments? There is no other rational explanation why these payments were made and conspicuously absent from the Leo Defendants' brief is an answer to this question. It is believed that discovery will ultimately reveal that the true source of the $525,000 was Tranen.

VI. **PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR UNJUST ENRICHMENT AGAINST THE LEO DEFENDANTS**

The Leo Defendants argue that Plaintiffs "do not allege that they performed services intended to even indirectly benefit Leo Group or that any benefit they conferred on Tranen was

passed through to the Leo Group." Leo Defendants' Brief, p. 7. The Leo Defendants should read the Amended Complaint more carefully as ¶23 alleges that: "Leo and Bagley also benefited from the time and effort Andersen expended managing marketing and sales at Tranen and the Fund because most of the sales transactions were brokered by Leo." *See also* ¶ 70. The "time and effort" Andersen expended developing Tranen's business, which, in turn, benefited the Leo Defendants, is set forth in the Amended Complaint at ¶¶ 20-24.

The Leo Defendants then argue that any benefit received through the work it performed for Tranen was the result of "Leo Group's development of a solid reputation, Tranen's separate, independent decision to engage Leo Group as its broker and Leo Group's providing the required brokerage services to Tranen." Leo Defendants' Brief, p. 7. This statement is conclusory and unsubstantiated and is not sufficient to dismiss Plaintiffs' claim as the most it accomplishes is to present an issue of fact. On a motion to dismiss, factual disputes must be resolved in favor of a plaintiff. Accordingly, the Tranen Defendants' motion to dismiss Plaintiffs' unjust enrichment claim should be dismissed. *Stone v. Town of Hope,* 2002 U.S. Dist. LEXIS 7149, *8 (S.D. Ind. Mar. 7, 2002) ("[b]ecause this court can conceive of facts that when accepted as true would allow the plaintiff to prevail, [d]efendants' [m]otion to [d]ismiss on this issue must be denied.").

## VII.   PLAINTIFFS' CLAIMS AGAINST BAGLEY SHOULD NOT BE DISMISSED

The Leo Defendants also argue that Plaintiffs have not sufficiently alleged a claim for alter ego liability against Bagley. This argument misconstrues the Amended Complaint though. To be clear, Plaintiffs are not, at this time, alleging a claim for alter ego liability against Bagley. Bagley is named as a party because Plaintiffs believe that he may have personally committed to paying Andersen. In Plaintiffs' view, the Defendants have jointly and severally committed to

paying Andersen. Discovery, especially of the separate agreement entered into between the Leo Defendants and the Tranen Defendants, should clarify this point.

In any event, if dismissal is granted, it should be without prejudice, especially since there has been no discovery to date. *See Gard v. I-Flow Corp.*, 2010 U.S. Dist. LEXIS 117123 (N.D. Ind. Nov. 2, 2010) (granting dismissal without prejudice because dismissing the case with prejudice, prior to discovery, would place the plaintiff "in a worse position than he would have been in if he had simply declined to include these counts in his initial pleading.")

## VIII. CONCLUSION

For the reasons above, Tranen Defendants' motion to dismiss and Leo Defendants' motion to dismiss should be denied together with costs and all other relief deemed proper by this Court.

Dated: Indianapolis, Indiana
August 20, 2012

FAEGRE BAKER DANIELS LLP

s/ Ryan M. Hurley
_____

Ryan M. Hurley
Email: Ryan.Hurley@faegrebd.com
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
(317)237-1144

and

DUANE MORRIS LLP

s/Mauro M. Wolfe
_____

Mauro M. Wolfe
E-mail:mmwolfe@duanemorris.com
Evangelos Michailidis
E-mail:emichailidis@duanemorris.com

14

        1540 Broadway
        New York, NY 10036-4086
        (212) 692 1000

        *Attorneys for Plaintiffs Stavanger Holdings, Ltd.*
        *and Karl Andersen*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 20th day of August 2012, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all of the parties who have subscribed to the Court's electronic filing system.  Parties may access this filing through the Court's system.

        s/Ryan M. Hurley
        _____
        Ryan M. Hurley