**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **STAVANGER HOLDINGS, LTD., et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **CAUSE NO. 1:12-cv-646-WTL-DKL** |
| | ) |
| **TRANEN CAPITAL, LTD., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## ENTRY ON MOTIONS TO DISMISS

This cause is before the Court on the Defendants' motions to dismiss the Plaintiffs'

Amended Complaint (dkt. nos. 26 and 28)[1]. The motions are fully briefed and the Court, being

duly advised, rules as follows.

## I.  SUBJECT MATTER JURISDICTION

During its initial review of the instant motions, the Court realized that the Plaintiffs had

not adequately alleged the citizenship of the parties in this case. Accordingly, the Court ordered

the Plaintiffs to file a supplemental jurisdictional statement to provide the omitted information.

The Plaintiffs have now done so, and the Court is satisfied that the requirement of diversity of

citizenship is satisfied and therefore it has subject matter jurisdiction over this case.

One further note is in order. The Plaintiffs' supplemental jurisdictional statement ends

with the following statement:

> Even if the parties are not completely diverse, the Amended Complaint alleges
> that jurisdiction and venue are appropriate in this Court pursuant to Section 17 of
> the Agreement, which provides that "the parties agree to venue and jurisdiction in
> the state and federal courts located in Marion County, Indiana … shall be the

---

[1]The Defendants also moved to dismiss the original Complaint; those motions (dkt. nos.
19 and 22) are **DENIED AS MOOT** in light of the filing of the Amended Complaint.

courts of exclusive jurisdiction and venue over any enforcement" of the
Agreement. *See* Amended Complaint, par. 3.

While this statement, which appears under the subheading "Jurisdiction Is Still Proper Pursuant

to the Agreement," is true—the Amended Complaint does, in fact, contain that allegation—the

suggestion that the parties' agreement is in any way relevant to whether this Court has subject

matter jurisdiction over this case is entirely without merit.

> Federal district courts are courts of limited jurisdiction; they possess only that
> power authorized by Constitution and statute.  Congress has conferred subject
> matter jurisdiction on the district courts only in cases that raise a federal question
> and cases in which there is diversity of citizenship among the parties.

*Smart v. Local 702 Intern. Broth. of Elec. Workers*, 562 F.3d 798, 802 (7th Cir. 2009) (internal

quotation marks and citations omitted).   Litigants cannot simply agree to circumvent the

statutory requirements for diversity jurisdiction and create subject matter jurisdiction where it

does not otherwise exist.  In the absence of a federal question, a plaintiff must demonstrate that

all of the requirements of 28 U.S.C. § 1332 are satisfied; otherwise, the case must be dismissed

for lack of subject matter jurisdiction.  *Id.*

## II.  <u>MOTION TO DISMISS STANDARD</u>

The Defendants' motions are brought pursuant to Federal Rule of Civil Procedure

12(b)(6).  In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true

and draw all permissible inferences in favor of the plaintiff."  *Agnew v. National Collegiate*

*Athletic* Ass'n, 638 F.3d 328, 334 (7th Cir. 2012).  For a claim to survive a motion to dismiss for

failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is

and the grounds upon which it rests."  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (omission in original).  A complaint must "contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Agnew*, 638 F.3d at 334 (citations omitted).  A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level."  *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 556 (2007).

### III.  BACKGROUND

The facts as alleged in the Amended Complaint are as follow.

Defendant Tranen Capital Ltd. ("Tranen") was formed in February 2008 to manage a fund that would invest in the life settlement industry.[2]  Defendant Tranen Capital Alternative Investment Fund, Ltd., ("the Fund") is the fund that is managed by Tranen.  Defendant The Leo Group, LLC, ("Leo") is the licensed life settlement provider for the Fund; in other words, it purchases the life insurance policies that become the assets of the Fund.  Defendants Kenneth A. Landgaard and Arthur L. Bowen are directors of Tranen.  Because neither Landgaard nor Bowen had experience or contacts in the life settlement industry, they hired Plaintiff Karl Andersen as an independent contract to advise them and to use his experience and foreign contacts to develop the Fund's foreign clientele.  "In exchange for his efforts, Landgaard and Bowen promised to compensate Andersen once Tranen and/or the Fund had cash available."  Amended Complaint at ¶ 19.

Andersen performed various services for Tranen between 2008 and 2011;[3] "[e]ssentially, Andersen handled the day to day operations of marketing and sales, targeting foreign investors,

---

[2]As described in the Amended Complaint, the life settlement industry is the secondary market of life insurance policies; specifically, "The Life Settlement Industry provides a [life insurance] policy holder the opportunity to sell the policy to third party purchasers . . . for more than the cash amount that the insurance company would pay on the surrender of the policy." Amended Complaint ¶ 7.

[3]Beginning in 2010, Andersen provides his services through a company he created, Plaintiff Stavanger Holdings, Ltd. ("Stavanger").

at Tranen and the Fund." *Id.* at ¶ 20.  As a result of his efforts, the Fund is now valued at approximately $170 million.

In October 2011, "Landgaard and Bowen, who had benefited from the services Andersen rendered between 2008 and 2011, decided that they no longer required Andersen's services and agreed to compensate Andersen $3 million for his past services." *Id.* at ¶ 25.  The three men agreed to memorialize the obligation to pay Andersen in a written agreement.  For reasons that are not clear to Andersen, an agreement was drafted that obligated Leo, not Tranen (or Landgaard and Bowen), to pay Andersen, through Stavanger, $3 million over the course of the next three years (hereinafter referred to as "the Contract").  Tranen and Leo entered into a second agreement pursuant to which Tranen agreed to fund the payments made to Stavanger by Leo pursuant to the Contract.   While the Contract "states that Stavanger's compensation is 'subject to continued performance' under said agreement . . . in reality, the $3 million compensation was for services already rendered and was not contingent on the performance of any additional services." *Id.* at ¶ 64.

Andersen signed the Contract on behalf of Stavanger on November 9, 2011.  Between that date and November 15, 2011, Leo transferred a total of $500,000 to Andersen (or his designee), which represented the first installment due under the Contract.  Pursuant to the terms of the Contract, eleven additional payments were to be made in the amount of $227,272.72 each beginning in January 2012 and continuing until July 2014.  However, the only other payment Leo has made is a $25,000 payment in February 2012.

## IV. <u>DISCUSSION</u>

Two motions to dismiss pend; one filed by Defendants Landgaard, Bowen, Tranen, and the Fund (collectively "the Tranen Defendants") and the other by Defendants Randy Bagley and Leo (collectively "the Leo Defendants"). Each motion is addressed, in turn, below.

### A.   The Leo Defendants' Motion to Dismiss (Dkt. No. 26)

Defendant Leo argues that the Plaintiffs' breach of contract claim against it must be dismissed because the Plaintiffs "admit they do not possess a fully executed document and they do not allege any facts that make the existence of a fully executed document plausible." Leo Defendants' Reply at 5. The Court disagrees. While the copy of the contract attached to the Amended Complaint indeed is only executed by Andersen on behalf of Stavanger, the Plaintiffs allege that Leo made payments in the amount of $525,000 pursuant to the Contract. The Court finds that this, coupled with the emails attached to the Amended Complaint, raises the possibility that the Contract was executed by Leo beyond the speculative level. More, of course, will be required for the Plaintiffs ultimately to prevail on their claim against Leo,[4] but there is enough here to permit the claim to go forward.

Similarly, the Amended Complaint contains enough facts to permit the Plaintiffs' alternative claim for unjust enrichment against Leo to go forward. While the Leo Defendants argue that they obtained no benefit from the Plaintiffs' work because that work was performed for the benefit of Tranen, it is not at all difficult for the Court to find it plausible that a company that

---

[4]Leo overreaches when it asserts that "Plaintiffs have not, and by their admission cannot, establish the existence of an enforceable contract with Leo Group" because they "affirmative [sic.] admit they do not possess a contract executed by Leo Group." Leo Group Reply at 4. If the contract was, in fact, executed by Leo, the Plaintiffs should easily be able to establish that fact via discovery. The relevant inquiry is not whether Plaintiffs currently possess an executed copy of the Contract, or even whether an executed copy still exists; rather, it is whether the Contract was, in fact, executed.

paid someone $525,000 likely obtained—or at least expected to obtain—some benefit for it. There are other possible explanations, of course, but for pleading purposes plausibility is all that is required.

Finally, Defendant Bagley argues that the Amended Complaint fails to plead facts that demonstrate that it is plausible that he—as opposed to Leo, his company—is personally liable to the Plaintiffs for anything.  The Court agrees.  The Plaintiffs assert that "[u]pon information and belief, Leo is merely the alter ego of Bagley because the corporation is heavily influenced and governed by him and there is such a complete unity of interest between Leo and Bagley that the entity is inseparable from him."  This allegation, without more, does not suggest that it is plausible that Bagley is personally liability for Leo's actions vis-à-vis the Plaintiffs. Accordingly, the Plaintiffs have not adequately pled a claim against Bagley.

**B.   The Tranen Defendants' Motion to Dismiss (Dkt. No. 28)**

The Tranen Defendants move to dismiss the breach of contract claim against them on the ground that they are not parties to the Contract.  The Plaintiffs respond as follows:

> This argument largely ignores well-established law that Tranen Defendants may be bound by the terms of the Leo/Andersen Agreement if they are in privity with the Leo Defendants. That is the obvious circumstance here. As discussed below and alleged in the Amended Complaint, the payment obligation set forth in the Leo/Andersen Agreement, which was negotiated and drafted almost entirely by the Tranen Defendants, actually memorializes the payment the Tranen Defendants promised Andersen.
>
> Moreover, the Defendants appear to have negotiated a separate agreement between themselves regarding their commitment to pay Andersen. Unquestionably, these Agreements had the common objective of paying Andersen. For Andersen, dealing with the Leo Defendants in this transaction was equivalent to dealing with the Tranen Defendants because, as far as Plaintiffs could tell, the Defendants had jointly and severally committed to paying Andersen. Defendants did nothing to disabuse Plaintiffs of this perception and, in fact, acted in concert throughout the drafting and negotiation of the Agreements.

Plaintiffs' Brief at 2-3.  The Plaintiffs point to the following factual allegations that they assert establish privity between Leo and Tranen with regard to the Contract:

- the Tranen Defendants negotiated various terms of the Leo/Andersen Agreement directly with Andersen, including the payment amount and term of the agreement;

- the Tranen Defendants required that certain protective covenants be integrated into the Leo/Andersen Agreement;

- the approval of the Tranen Defendants was required before the transaction could be finalized; and

- the Tranen Defendants appear to have entered into a separate agreement with the Leo Defendants regarding this transaction (the Leo/Tranen Agreement).

Plaintiffs' Brief at 11.  While these facts may explain why Andersen believed he would be contracting with the Tranen Defendants, the written contract–required by the statute of frauds–unequivocally demonstrates that Leo, not the Tranen Defendants, was the party entering into an obligation to pay the Plaintiffs.  That contractual obligation may have been entered into at the direction of the Tranen Defendants, but the Plaintiffs do not cite to any authority for proposition that such direction constitutes privity vis-à-vis the contract such that it may be enforced against the Tranen Defendants.  Thus, while there may be circumstances in which someone who is not a party to a contract may be bound by it, the Plaintiffs here have not pled facts that demonstrate that it is plausible that this is such a circumstance.  Accordingly, the motion to dismiss is **GRANTED**  with regard to the breach of contract claim against the Tranen Defendants.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, the Leo Defendants' motion to dismiss (dkt. no. 26) is **GRANTED** with regard to the Plaintiffs' claims against Bagley and **DENIED** in all other

respects.  The Tranen Defendants' motion to dismiss the breach of contract claim against them

(dkt. no. 28) is **GRANTED**.

      SO ORDERED:   12/10/2012

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification