IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STAVANGER HOLDINGS, LTD and KARL ANDERSEN,<br><br>            Plaintiffs,<br><br>    vs.<br><br>TRANEN CAPITAL, LTD, TRANEN CAPITAL ALTERNATIVE INVESTMENT FUND, LTD., THE LEO GROUP, LLC, KENNETH A. LANDGAARD, and ARTHUR L. BOWEN,<br><br>            Defendants. | Civil Action No.: 12 - 00646 (WTL)(DKL) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL DISCOVERY FROM THE TRANEN DEFENDANTS**

Plaintiffs Stavanger Holdings, Ltd. ("Stavanger") and Karl Andersen ("Andersen") (collectively, the "Plaintiffs"), by and through their attorneys, Faegre Baker Daniels LLP and Duane Morris LLP, respectfully submit this reply memorandum of law in further support of their motion to compel discovery from Defendants Tranen Capital Ltd., Tranen Capital Alternative Investment Fund, Ltd., Kenneth A. Landgaard and Arthur L. Bowen (collectively, the "Tranen Defendants" or "Tranen").

**PRELIMINARY STATEMENT**

Plaintiffs' surviving claim against the Tranen Defendants is solely based upon a theory of unjust enrichment/quantum meruit. See Amended Complaint (ECF #24), ¶¶ 66-71. Pursuant to this claim, Plaintiffs allege that they provided services to Defendants in exchange for some promised remuneration. Plaintiffs provided the promised services but have yet to be fully paid.

Accordingly, Plaintiffs' document demands are narrowly tailored to the simple issues being litigated in this case – what services did Plaintiffs provide to Tranen Defendants and what is the value of those services. Plaintiffs seek to compel Tranen Defendants to produce the records in its possession, custody or control that pertain to these narrow issues.

Thus far, Defendants have made, at best, a half-hearted effort to comply with Plaintiffs' demands. Only one Tranen Defendant, Arthur Bowen, has produced any documents. His production consisted of a paltry 49 pages of documentation. In stark contrast, Plaintiffs have in good faith produced over 23,000 pages of records.

The other Tranen Defendants attempt to skirt their discovery obligations through the submission of a vague and conclusory affidavit from Kenneth Landgaard, which attributes their non-responsiveness to a "financial dispute" with some unnamed "internet service provider." For example, Tranen via Landgaard makes no good faith effort whatsoever to explain to Plaintiffs or this Court the nature of the dispute or the efforts the Tranen Defendants have made to resolve the dispute or other efforts to identify the location of servers, or other electronic media devices – such as desktops, laptops, or other portable devices, which would store Tranen's electronic data archives relevant to this litigation. Notably, Tranen admits that all records regarding services rendered by Plaintiffs would be stored in this electronic archive, so it is clear that these archived documents must be located, identified, searched, and produced, or in the alternative made available for the Plaintiffs to image and search, which would be preferable.

Indeed, if the barren explanations provided by Landgaard were all that was required to evade discovery obligations, then the discovery process would be rendered meaningless. Defendants would simply not pay their internet provider and expect to be shielded from discovery. Of course, this is not what the Federal Rules provide. This Court should compel

Tranen Defendants to take discovery seriously and cease impeding the progress of this case with their evasive tactics.

## ADDITIONAL FACTS

Simply put, Plaintiffs are suing Tranen Defendants for breaking their promise to pay Plaintiffs for services rendered between the years 2008 and 2011, and to which Defendants are still receiving a residual benefit. The Tranen Defendants, however, have done a good job of muddying this relatively straight forward litigation in their opposition papers by disingenuously asserting or implying that Plaintiffs never worked for Tranen Defendants and by positing that, even if Plaintiffs provided services, that they were of no value. As discussed below, both of these assertions are directly contradicted by Tranen's own words and deeds. These incongruous arguments need to be addressed up front as they are critical in understanding the relevancy of the documents Plaintiffs are seeking to obtain by this motion.

Tranen cannot credibly argue that Plaintiffs did not work for them. Nevertheless, Tranen's Opposition Brief references an "alleged hiring of Plaintiffs," implying that maybe Plaintiffs never worked for Tranen Defendants at all. See Tranen Opp. Mem. of Law (the "Opposition Brief"), p. 4 (Emphasis added). This is an absurd position that is directly contradicted by Landgaard's own admission in a sworn affidavit submitted in an action before the Eastern Caribbean Supreme Court, British Virgin Islands in the High Court of Justice, on or about August 22, 2013. See Declaration of Mauro Wolfe, dated September 5, 2013 ("Reply Declaration"), Exhibit 15. In his affidavit, Landgaard admits that Andersen "was hired on or around 2008 as an independent contractor to advise Tranen on the International Life Settlement Industry and to develop the Fund's foreign clientele. [Andersen] later provided his consulting services through a company called [Stavanger]." Id., ¶7.

Likewise, Tranen cannot credibly argue that they did not derive some value from Plaintiffs' services. Yet, Defendants disingenuously assert they "derived no benefit from services provided by Plaintiffs." Opposition Brief, p. 7. This assertion is directly contradicted by Arthur Bowen's admission made to the Grand Cayman, Head of Insurance Supervision, Monetary Authority, dated January 17, 2012, that Andersen provided Tranen with valuable services:

> I have known Mr. Andersen for 6 years, both professionally and socially. He has worked with me at Tranen Capital, Ltd., an investment management company (the "Company"), for the last 4 years, **and has helped bring new investors to the Tranen Capital Alternative Investment Fund Ltd., for which the Company acts as investment manager. He had been working with the Company since the first days of operations.**
>
> In my opinion and experience, Mr. Andersen is principled, honest, hard-working, reliable, and committed to his profession.

Reply Declaration, Exhibit 16 [Emphasis added]. Would Bowen give such a glowing endorsement of Andersen if Tranen received no benefit? Obviously, he would not. In stark contrast to Tranen's assertions in its papers, the letter clearly states that Andersen was successful in bringing new [foreign] investors to the Fund, a service that is *per se* valuable and extraordinarily lucrative for individuals, like Mr. Andersen, who have the appropriate skill set and contacts to offer a company like Tranen. Additionally, Plaintiffs received some remuneration for their valued services from the Tranen Defendants between 2008 and 2011. See Reply Declaration, ¶7. Indeed, it defies reason that Tranen Defendants would compensate Plaintiffs over a four year period, and continue to employ Plaintiffs if they were not receiving some benefit from Plaintiffs.

Since it is clear that (a) Plaintiffs provided services and (b) that the services had some value, the remaining question is what is the value of those services. Plaintiffs allege that when their relationship ended with Tranen Defendants, the parties agreed to a payment of $3 million to

be paid over 3 years as fair compromise for all past services rendered by Plaintiffs.  **Considering that brokers generally make a commission of as much as 30% for life insurance** policies they sell, $3 million was a substantial discount on what Plaintiffs could have demanded for the investors they brought to the Fund, believed to be valued at well over $100 million.  See Reply Declaration, ¶8, Exhibit 20.  This agreed to value was memorialized in the Leo/Andersen and Leo/Tranen Agreements (collectively, the "Agreements").

Because the sole surviving claim against Tranen is Unjust Enrichment, Plaintiffs are entitled to discovery regarding all the services Plaintiffs provided Tranen, the impact that those services had on Tranen's formation and its ability to attract and secure foreign investors, the amount of funds delivered by investors, the impact that those investor funds had on the valuation of the relevant companies, the benefits and residual benefits, and the value that Tranen received due to the services provided by Plaintiffs.  Without such discovery, it is very difficult for Plaintiffs to properly measure the true financial worth of the services they provided to Tranen from 2008 through 2011 and the residual benefit Tranen continues to receive to this day.

For these reasons, Plaintiffs are entitled to all documents regarding services they provided, the benefit Tranen Defendants received from those services and the value of those services.  That is precisely what Plaintiffs have requested and Tranen Defendants have refused to produce.

## ARGUMENT

The Tranen Defendants' principle argument in opposition to Plaintiffs' Motion to Compel is that Plaintiffs seek documents which are not relevant to Plaintiffs' unjust enrichment/quantum meruit claim.  Opposition Brief, p. 2.  Considering that relevancy is construed very broadly in the discovery context, there can be no question that the documents

Plaintiffs seek to compel are relevant to Plaintiffs' unjust enrichment claim because they directly relate to the services Plaintiffs performed, the value of those services and the expectation that payment would be made for these services. *See Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002)(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978)) ("any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case" is relevant for discovery purposes).

      A.      Plaintiffs' Are Entitled To All Documents That Relate To the Services They Rendered

Request 1 seeks the production of Tranen's formation documents. Andersen assisted in forming the Tranen entities by retaining and working with the law firm O'Neal Webster. Attached as Exhibit 17 to the Reply Affirmation is that firm's engagement letter, dated November 12, 2007 and signed by Andersen, which states that the scope of its engagement was to form a British Virgin Islands professional fund and master fund, that ultimately became Tranen Capital Alternative Investment Fund and Tranen Capital LTD. See id., ¶4. Additionally, Bowen himself admits that Andersen worked "with the Company since the first days of operations." Reply Declaration, Exhibit 16. Clearly, Andersen was involved in the formation of Tranen and he deserves to be compensated for these services.

Request 2 seeks the production of documents identifying directors, officers and shareholders. These documents are relevant for three reasons. First, these documents would lead to potential witnesses who interacted with Plaintiffs and who could testify about the services Plaintiffs rendered to Tranen Defendants. Second, the documents would help Plaintiffs demonstrate that the directors and officers of Tranen lacked experience in the Life Settlement Industry and support Plaintiffs' allegation that they were hired because of their expertise and

6

contacts in the industry, which directly pertains to the value of the services Plaintiffs rendered. Third, the documents would help Plaintiffs identify which foreign investors and shareholders they attracted to the Fund and the funds derived from those foreign investors. As both Landgaard and Bowen themselves admit, Andersen was engaged to bring foreign investors to the Fund. See Reply Declaration, Exhibits 15 and 16. Plaintiffs should be permitted to inspect the documents identifying every investor and shareholder so they can identify which ones they were responsible for introducing to the Fund. These are records Tranen was likely required to keep and should be readily available to produce.

Request 11 seeks the production of all documents concerning services Plaintiffs rendered for Tranen Defendants. Tranen Defendants do not argue the relevancy of these documents in their Opposition Brief. Instead, Tranen Defendants state that if these documents exist, they would be located in the electronic archives which Tranen Defendants cannot access because of their financial dispute with their internet service provider.[1] Tranen Defendants do not explain what the financial dispute is or what has been done to resolve the dispute. Tranen Defendants have yet to even identify the name of the service provider. In fact, it does not seem that Tranen Defendants have made any effort whatsoever to obtain the documents stored in the electronic archives.

Of course, this does not come close to satisfying their discovery obligations. This Court should require Tranen Defendants to identify and produce for physical inspection all electronic devices that Tranen used between 2008 and 2011 so that Plaintiffs can image the devices and

---

[1] Notably, Tranen and Langaard appear to have a history of non-payment to third parties. In addition to not paying Plaintiffs, it appears they failed to pay their internet service provider and, more recently, failed to pay their attorneys at the firm of Arent Fox LLP, who have made claims in the amount of $292,760.51 in a civil complaint filed in U.S. District Court for the Southern District of New York, filed on August 30, 2013. See Reply Declaration, Exhibit 18.

conduct its own review of the stored data. Further, Tranen should be required to produce the name of the internet service provider and full details about their network infrastructure. Alternatively, Tranen Defendants should be required to produce their IT expert at a deposition to testify about the location and storage of Tranen's electronic records.

Request 16 seeks the production of all testimony and records related to any investigation of Tranen by the SEC or any foreign securities regulators. This request is relevant to the extent Tranen has been the subject of investigation and may have made representations and admissions to SEC investigators about Plaintiffs' relationship to the Tranen Defendants and the services they have rendered, similar to the admissions made to the Cayman Insurance authorities, and to the Eastern Caribbean Supreme Court. See Reply Declaration, Exhibits 15 and 16.

      B.      <u>Plaintiffs Are Entitled To All Documents Concerning The Value Of The Services Rendered</u>

Requests 3 through 7 seek the production of all documents and communications concerning the Leo/Andersen and Leo/Tranen Agreements. Tranen Defendants argue that these documents are irrelevant because Plaintiffs breach of contract claim against them was dismissed by the Court. Tranen Defendants argument misses the point though. These Agreements were drafted and, Plaintiffs believe, executed in connection with discussions and negotiations Tranen Defendants and Plaintiffs had regarding the payment Plaintiffs would receive for past services rendered to Tranen Defendants. Both Agreements reflect the value of $3 million because that is the payment Plaintiffs agreed to accept. Hence, the Agreements and all documents and communications related to the Agreements provide evidence of the valuation of Plaintiffs' services and is highly relevant to Plaintiffs' unjust enrichment claim.

Additionally, the discovery could be relevant to the breach of contract case against Defendant Leo Group insofar as the evidence contains admissions made by Leo Group to others,

including to Tranen, acknowledging the existence of the agreement and the intent to be bound by the agreement, and the purpose of the agreements, i.e., to ensure that Plaintiffs are paid $3 million for past services rendered.

On Requests 3 through 7, Tranen Defendants alternatively argue that they have produced everything in their possession, custody or control regarding the agreements. This cannot be true because they have not accessed the electronic archive yet. The archive must be accessed and searched and all responsive documents produced immediately or an adequate explanation must be provided why accessing the archive is not possible. At the very least, the internet provider should be named immediately so Plaintiffs could issue a subpoena to have the documents in the archive produced. If the internet provider is found to be outside the U.S., Tranen should be ordered to takes all steps necessary to produce these records to Plaintiffs.

Requests 8 through 10 seek the production of documents relating to payments made by Tranen Defendants to Plaintiffs and the Leo Group. Documents relating to payments made by Tranen Defendants to Plaintiffs are clearly relevant as they pertain to the value of Plaintiffs services and directly contradict Tranen Defendants' argument that they derived no benefit from Plaintiffs services. Documents relating to payments made by the Tranen Defendants to the Leo Group are also relevant because Plaintiffs' allege that the Leo Group was acting as a strawman for Tranen Defendants to pay Plaintiffs $3 million for past serviced rendered, in order to apparently conceal Tranen's payments to Plaintiffs, for reasons yet unknown.

It bears noting that Tranen Defendants frequently utilized conduits to make payments to Plaintiffs and to other third parties. For example, Landgaard often used his company Information Process Management, Inc. to make payments to Plaintiffs for the valued services rendered. See Reply Declaration, Exhibit 19. Hence, when Tranen Defendants proposed to pay

Plaintiffs $3 million through Leo, Plaintiffs were not surprised as it was consistent with Landgaard's and Bowen's past practices.

Requests 12 through 15 seek the production of all financial records of Tranen showing the financial benefits they derived as a result of services provided by Plaintiffs, the assets and valuation of the Fund and the insurance policies that are assets of the Fund. Again, Tranen Defendants erroneously argue that they received no benefit from Plaintiffs. For the reasons previously stated, it is clear that this is false. Also, it is clear that this is false because Tranen Defendants made various payments to Plaintiffs between 2008 and 2011, in the amount of approximately $350,000. See Reply Affirmation, ¶7. It is hard to imagine that these payments would have been made if Plaintiffs were not providing valuable services to Tranen Defendants. A critical element in proving unjust enrichment is that plaintiff has conferred a benefit to the defendant. Through these requests, Plaintiffs seek to ascertain the value of that benefit, measured primarily by the net asset valuation of the Fund and the insurance policies that are or were assets of the Fund. The requested documents are clearly relevant.

To the extent Tranen Defendants are arguing that Plaintiffs did not take the necessary steps to execute the proposed confidentiality stipulation, Plaintiffs have attached a partially executed stipulation, promising to maintain all records under the strictest of confidence. See Reply Declaration, Exhibit 21.

  C. <u>Bowen's Privilege Log is Insufficient</u>

Rule 26 of the FRCP requires a withholding party to provide enough information about the withheld document to "enable other parties to assess the claim." Defendant Bowen's privilege log, which simply states "Attorney/client communication," makes it impossible to assess the claimed privilege without more information about the subject matter of the withheld

document. Defendant Bowen should provide a more detailed privilege log to enable Plaintiffs to assess the claimed privilege.

## CONCLUSION

For the reasons set forth above and in the initial moving papers, Tranen Defendants should be compelled to produce all documents responsive to Plaintiffs' Document Requests and for all other relief deemed to be just and proper by this Court, including Plaintiffs' attorneys' fees in connection with this motion.

Dated: September 5, 2013
Indianapolis, IN

FAEGRE BAKER DANIELS LLP

s/ Ryan M. Hurley

Ryan M. Hurley
Email: Ryan.Hurley@faegrebd.com
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
(317)237-1144

and

DUANE MORRIS LLP

s/Mauro M. Wolfe

Mauro M. Wolfe
E-mail:mmwolfe@duanemorris.com
Evangelos Michailidis
E-mail:emichailidis@duanemorris.com

1540 Broadway
New York, NY 10036-4086
(212) 692 1000

*Attorneys for Plaintiffs Stavanger Holdings, Ltd. and Karl Andersen*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 5th day of September 2013, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all of the parties who have subscribed to the Court's electronic filing system. Parties may access this filing through the Court's system.

                     s/Ryan M. Hurley
                     _____
                     Ryan M. Hurley